Joshua W. Carden, SBN 021698
CARDEN LIVESAY, LTD.
419 East Juanita Avenue
Building 103, Suite 1
Mesa, AZ 85204
joshua@cardenlivesay.com
T. (480) 345-9500
F. (480) 345-9559
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Breneiser and Todd Reeves,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>City of Mesa,<br><br>　　　　　　　　　Defendant. | **ORIGINAL COMPLAINT** |

Plaintiffs Christopher Breneiser and Todd Reeves, by and through undersigned counsel, for their Complaint against Defendant City of Mesa allege as follows:

## NATURE OF THE CASE

1.　Plaintiffs bring this action against Defendant for its violations of the Fair Labor Standards Act (FLSA) in failing to pay overtime, and Plaintiff Breneiser has additional claims for FLSA retaliation and FMLA interference.

## THE PARTIES

2.　Plaintiff Christopher Breneiser is a resident of Maricopa County, Arizona, and, at all relevant times herein, an "employee" of Defendant.

3.　Plaintiff Todd Reeves is a resident of Maricopa County, Arizona, and, at all relevant times herein, an "employee" of Defendant.

4.　Defendant City of Mesa ("Mesa") is a political subdivision of the State of Arizona and an "employer" of Plaintiffs at all relevant times herein.

5.　At all times pertinent to this Complaint, Mesa's management officials were acting

within the course and scope of their employment with Mesa; and as a result thereof, Defendant Mesa is responsible and liability is imputed for the acts and omissions of its management officials, as alleged herein, under the principle of *respondeat superior*, agency, and/or other applicable law.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7. The unlawful employment practices described herein were committed within the State of Arizona, on Defendant's premises located in Maricopa County, State of Arizona.

8. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9. Mesa has employed Mr. Breneiser and Mr. Reeves as two of its three to four Substation Electricians for the past several years.

10. Generally speaking, Plaintiffs' job duties involve maintenance and repair on Mesa's electrical substations that service residents.

11. Plaintiffs are "non-exempt" workers and have long received overtime for hours worked in excess of 40 in a given workweek.

12. A few years ago, Mesa initially decided it was going to create a call center for handling and dispatching reported electrical problems.

13. Mesa initially announced that it would hire 5-9 positions to staff the call center and allocated approximately $800,000 to $1 million in budgeting for this purpose.

14. However, for unknown reasons, Mesa abandoned this course of action.

15. Instead, Mesa set up an "on call" system for the Substation Electricians to serve on rotations.

16. Essentially, one week out of every three weeks, on a rotation basis, each Substation Electrician was expected to carry a City-issued laptop and tablet with them at all times and monitor it on a 24/7 basis – and render an immediate response (a "zero response time") to any reported problem.

17. On the vast majority of call codes, the response requires dispatching a lineman and



conversing with the customer, and activating the laptop or tablet (frequently from a public location or in their own personal vehicles) to assist the lineman and customer, then waiting to confirm that process to be completed, then completing a ticket to document that the lineman had been dispatched.

18. In exchange for this "on call" status, Mesa paid one hour of standby time for weekdays and two hours of standby time for Friday, Saturday, Sunday.

19. These 10 standby time hours were paid at the Plaintiffs' regular rate of pay, regardless of hours worked during the on-call shift.

20. Over a two and three year period, Plaintiffs worked hundreds of hours in excess of 40 hours per workweek while on call, for which they were not paid overtime at the lawful rate.

21. Previously, Plaintiffs were paid in minutes (at time and a half) for any phone calls.

22. Mesa recently announced at the beginning of 2024 that (allegedly) they were going to pay for a full hour if any minutes were worked.

23. Mesa has also announced that (allegedly) they were going to pay the back pay from the beginning of a dispatch to the conclusion of the dispatch.

24. Plaintiffs were "engaged to wait" in that they were expected to drop everything at a moment's notice and respond to any electrical problem 24-hours a day, seven days a week, while "on call" with a "zero response time" requirement imposed by Mesa.

25. Plaintiffs could not simply go to sleep and wait for a call to wake them up as Mesa has also instructed that intakes would be emailed to them and they should not wait for a phone call.

26. Plaintiffs have had to leave restaurants, grocery stores, family events, at the drop of a hat when receiving a call, or face punishment for exceeding Mesa's "zero response time" requirement.

27. Plaintiffs have raised this overtime issue with Mesa management officials and have received varying degrees of opposition when doing so.

28. Additionally, Chris Breneiser required FMLA for surgery in fall 2023.

29. He was also on light duty (not performing normal Substation Electrician duties)



Case 2:24-cv-00831-SMM   Document 1   Filed 04/11/24   Page 4 of 7

1  from November 2023 to January 2024.

30.     Upon his return from surgery and FMLA, Mesa has applied a different standard for allowing Chris Breneiser to take vacation days or sick days.

31.     Chris Breneiser was also instructed on his first day back to move heavy file cabinets and their contents despite his light duty lifting restrictions.

32.     Chris Breneiser has also been punished with poor performance reviews and disciplinary write-ups as a result of his protected activity and/or his use of FMLA leave.

33.     Plaintiff Chris Breneiser is still employed with Mesa.

34.     Plaintiff Todd Reeves resigned his employment in early 2024 rather than continue working on call without pay.

35.     All conditions precedent necessary to the filing of this lawsuit have been performed or have occurred.

**COUNT ONE - FAIR LABOR STANDARDS ACT OVERTIME VIOLATION**

36.     Plaintiffs hereby incorporate all preceding paragraphs and allegations of this Complaint as if fully set forth herein.

37.     At all times relevant to this action, the Plaintiffs were employed as Substation Electricians with Mesa.

38.     Substation Electricians were and are non-exempt employees under the FLSA.

39.     During their employment, Plaintiffs consistently and regularly were and are required to work unpaid week-long "on call" shifts in addition to generally working forty hours a week.

40.     Mesa has intentionally failed to pay Plaintiffs any wages for the "on call" shifts in direct violation of the FLSA.

41.     Plaintiffs should have been and should be paid at an overtime rate for each "on call" shift worked because the on call shift hours are all in excess of the forty hour work week FLSA overtime requirement.

42.     Mesa's "on call" construct does not comply with the "sleep time" exceptions to the FLSA or any other exception thereto.

43.     Mesa has engaged in a pattern and practice of violating the provisions of the FLSA



4

by failing to pay Plaintiffs in accordance with § 207 of the FLSA.

44. As a result of Mesa's violation of the FLSA, Plaintiffs have suffered damages by failing to receive compensation in accordance with § 207 of the FLSA.

45. Under 29 U.S.C. § 216, Mesa is liable to Plaintiffs for an amount equal to one and one-half times their regularly hourly pay rate for each hour of overtime worked per week, less any credits for amounts Mesa has actually paid Plaintiffs towards any of those hours.

46. In addition to the amount of unpaid wages owed, Plaintiffs are entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

47. Mesa has not made a good faith effort to comply with the FLSA.

48. Plaintiffs are also entitled to an award of attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT TWO - FLSA DISCRIMINATION

49. Plaintiff Chris Breneiser hereby incorporates all paragraphs and allegations of this Complaint as if fully set forth herein.

50. The FLSA makes it unlawful:

> [T]o discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000).

51. Plaintiff Breneiser engaged in protected activity (reporting the overtime issues to Mesa management officials) and suffered a materially adverse employment action (poor performance reviews) as a result.

52. This retaliation caused Plaintiff Breneiser damages, including significant emotional distress for suffering unfair and retaliatory actions by Mesa in response to their protected activity.

53. Because Mesa retaliated against Plaintiff Breneiser for engaging in protected activity, Mesa is subject to penalties under 29 U.S.C. 216(b), damages, liquidated damages, punitive damages, and attorney's fees.

## COUNT THREE - FMLA INTERFERENCE

54. Plaintiff Chris Breneiser hereby incorporates all paragraphs and allegations of this Complaint as if fully set forth herein.

55. Plaintiff Breneiser provided prompt and reasonable notice to Mesa of his need to be on leave for a surgery in late 2023.

56. Plaintiff Breneiser was eligible for FMLA leave and requested it from Mesa, and provided the necessary paperwork from his doctor in a timely fashion.

57. The FMLA requires Mesa to restore Plaintiff Breneiser to his same or equivalent position following his medical leave; instead Defendant terminated began treating Plaintiff different.

58. Upon information and belief, Defendant considered Plaintiff's medical condition requiring FMLA leave and/or or Plaintiff's application for FMLA leave as a negative factor in making decision regarding the terms and benefits of his employment.

59. Defendant's actions based on Plaintiff's use of FMLA leave have had the effect of interfering with Plaintiff's rights under the FMLA.

60. Defendant has thus interfered with Plaintiff's rights under the FMLA in violation of 29 U.S.C. § 2615.

61. Defendant has caused Plaintiff economic damages by violating the FMLA.

62. Because Defendant's violations were committed without good faith, Plaintiff is entitled to an equal additional amount as liquidated damages under the FMLA.

63. Plaintiff is further entitled to equitable relief as determined by the Court.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal law;

B. Assessing applicable civil fines and penalties against Defendant as authorized under the statutes cited herein;

C. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect



Plaintiffs' employment or employment opportunities; including the removal of retaliatory personnel actions against Plaintiffs;

D. Awarding Plaintiffs' compensation, including overtime if applicable, in the amount due to them for all of the Plaintiffs' time worked during the overnight shift equal to one and one-half times Plaintiffs' regular hourly rate for the past three (3) years or, alternatively, the past two (2) years depending upon the nature of the Defendant's conduct;

E. Awarding Plaintiffs liquidated damages in an amount equal to the overtime award for the past three (3) years, or alternatively, for the past two (2) years depending upon the nature of the Defendant's conduct;

F. Awarding Plaintiff Breneiser damages, including emotional distress damages, for the retaliation experienced after engaging in protected activity and interference for use of FMLA leave;

G. Awarding Plaintiffs permanent injunctive relief to restrain future violations of law,

H. Awarding Plaintiffs reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. § 216(b);

I. Awarding Plaintiffs pre-judgment interest, at the highest legal rate, on all amounts due from the date of the payment due for that pay period until paid in full;

J. Awarding Plaintiffs post-judgment interest, at the highest legal rate, on all awards from the date of such award until paid in full; and

K. For such other and further relief as the Court deems just and proper.

Respectfully submitted on this 11th day of April, 2024,

CARDEN LIVESAY, LTD.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorney for Plaintiffs*

